**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Saguaro Medical Associates, P.C., an Arizona professional corporation; and Rakesh Malhotra, M.D., <br><br> Plaintiffs, <br><br> vs. <br><br> Banner Health, an Arizona corporation, d/b/a Banner Thunderbird Medical Center, <br><br> Defendant. | No. CV-08-1386 PHX-DGC <br><br> **ORDER** |

Plaintiffs Saguaro Medical Associates ("Saguaro") and Rakesh Malhotra, M.D. have filed a motion for summary judgment. Dkt. #107. Defendant Banner Health ("Banner") has filed a motion for summary judgment. Dkt. #114. Both motions are fully briefed. For the reasons that follow, the Court will deny Plaintiffs' motion and grant in part and deny in part Banner's motion.[1]

**I.     Background.**

    **A.     The parties.**

Banner is a medical center that runs an emergency department staffed by hospitalists. A hospitalist is a doctor who cares for patients in a hospital setting. Dkt. #106, ¶ 5; #120, ¶ 5. Saguaro is a professional corporation owned by Malhotra, which provides hospitalist

---

[1] The requests for oral argument are denied. The parties have fully briefed the issues and oral argument will not aid the Court's decision. *See Lake at Las Vegas Investors Group, Inc. v. Pac. Malibu Dev. Corp.*, 933 F.2d 724, 729 (9th Cir. 1991).

services. Dkt. #114 at 2.[2] Malhotra is an employee of Saguaro, and was, at certain times, the Chairman of Banner's Medical Executive Committee (MEC). Dkt. #122 at 3-4. Malhotra was removed as Chairman by the other members of the MEC, although the reason for his removal is disputed. Dkt. #122 at 5. Malhotra is Indian. Dkt. #18, ¶ 2.

**B.     The Agreement.**

On June 1, 2005, Banner and Saguaro entered into a semi-exclusive contract (the "Agreement") whereby Saguaro would provide hospitalist services to Banner at the Banner Thunderbird Medical Center Emergency Department. Dkt. #106-3 at 2-23; #106, ¶ 6; #120, ¶ 6. On February 23, 2007, the parties amended the Agreement ("First Amendment"). The First Amendment extended the term of the Agreement and initiated a performance-based incentive program. Dkt. #106, ¶¶ 22, 25; #120, ¶¶ 22, 25. The Agreement – both before and after the First Amendment – contained a paragraph indicating that prior to the expiration of the Agreement, either party could terminate the agreement for cause. Dkt. #106-3 at 7. Cause could include, among other things, "[a] material breach by the other party which that party fails to correct . . . within thirty (30) days." *Id.*

For the first two years of the Agreement, neither party attempted to terminate the Agreement or issue any notice of material breach. But on May 24, 2007, Banner issued a first notice of material breach ("first notice") to Saguaro stating that Saguaro failed to comply with the Agreement. Dkt. #106, ¶ 29; #120, ¶ 29. Banner issued another notice of non-compliance ("second notice"), alleging two different material breaches, on September 27, 2007. Dkt. #106, ¶ 46; #120, ¶ 46. Banner issued its final notice of non-compliance ("third notice") on February 27, 2008, in which it alleged another material breach. Dkt. #106, ¶ 70; #120, ¶ 70. Based on these alleged material breaches, Banner terminated the Agreement on March 28, 2008.

After termination of the Agreement, Saguaro and Malhotra filed the present litigation, claiming that Banner breached the Agreement and tortiously interfered with contracts by

---

[2] Citations to pages in the parties' filings will be to the page numbers applied by the Court's electronic docket at the top of each page.

rejecting Saguaro's cures to the alleged material breaches. Dkt. #18 at 17. Malhotra further claims that Banner took adverse actions against him because of his Indian race. *Id.* at 20. Saguaro asserts the following causes of action: breach of contract (Count One), breach of implied covenant (Count Two), declaratory judgment (Count Three), and intentional interference with contractual relations (Count Five). Dkt. #18. Malhotra asserts claims for intentional interference with contractual relations (Count Four) and violation of 42 U.S.C. § 1981 (Count Six). *Id.*

Both Plaintiffs seek summary judgment on one of Banner's affirmative defenses. Saguaro seeks summary judgment on Banner's liability for breach of contract (Count One). Banner seeks summary judgment on Counts Four, Five, and Six. For the reasons that follow, the Court will grant Banner's motion for summary judgment on Count Five and Count Six, and will deny it on Count Four. The Court will also deny Plaintiffs' motion for summary judgment on Banner's affirmative defense and will deny Saguaro's motion for summary judgment on Banner's liability for breach of contract.

**II. Legal Standard.**

A party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, shows "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

**III. Plaintiffs' motion for summary judgment.**

Plaintiffs seek summary judgment on whether Banner is liable to Saguaro for breach of contract (Count One) and whether Plaintiffs' claims are barred by a failure to mitigate damages. Dkt. #107 at 1-2. The Court will deny the motion as to both issues.

**A. Banner's liability for breach.**

In its motion for summary judgment, Saguaro argues that Banner breached the

1 Agreement by sending its first, second, and third notices of material breach, all of which
2 allege Saguaro committed breaches that, according to Saguaro, are not material under the
3 Agreement. Dkt. #107. Banner notes in its response that Saguaro's breach of contract claim,
4 as set out in the second amended complaint, is based only on the second notice, not on the
5 first or third notices. Dkt. #119 at 2. Banner contends that because the breach of contract
6 claim is based only on the second notice, Saguaro is limited to arguing breach based on that
7 notice. *Id.* The Court agrees and will not consider Saguaro's arguments as to the first and
8 third notices.[3]

9 Saguaro asserts that it is entitled to summary judgment on its breach of contract claim
10 because no issue of material fact exists as to two alleged breaches by Banner arising from the
11 second notice. Saguaro asserts that Banner undisputedly breached the Agreement by
12 (1) accusing Saguaro of committing material breaches that were not actually material under
13 the Agreement, and (2) rejecting Saguaro's cures for those alleged breaches. Dkt. #107. The
14 Court disagrees with Saguaro as to both issues.

**1.  The Court cannot hold that Banner breached the Agreement by its accusations against Saguaro.**

17 Saguaro alleges that Banner accused it of committing two material breaches that were
18 not actually material under the terms of the Agreement. *Id.* This action by Banner,
19 according to Saguaro, amounts to a breach of the Agreement. Whether the alleged violations
20 can amount to a material breach under the Agreement is a question of law for the Court.[4]
21 *Chandler Improvement Co. v. Andersen*, 7 P.2d 255, 257 (Ariz. 1932). To determine whether
22 the alleged breaches were material, the Court must use ordinary principles of contract
23 interpretation. "Where the provisions of the contract are plain and unambiguous upon their

---

[3] The Court also will not hear arguments at trial regarding breach of contract based on the first and third notices.

[4] The Court here is merely addressing the question of whether the alleged violations, if true, could amount to material breaches. The Court is not addressing whether Saguaro actually committed the alleged violations. That is a factual issue for the jury.

face, they must be applied as written, and the court will not pervert or do violence to the plain and ordinary meaning . . . ." *Dairyland Mut. Ins. Co. v. Andersen*, 433 P.2d 963, 965 (Ariz. 1967).

Saguaro argues that any material breach must be specifically named in the Agreement. The Agreement does list several examples of acts that would qualify as a material breach, but expressly states that the list is "without limitation." Dkt. #106-3 at 8. Thus, a material breach can be any failure of a party to "provide the essential functions contemplated by [the] Agreement." *Id.* at 7. The failure does not have to be specifically named as an example in Paragraph 7.4 of the Agreement.

Saguaro alleges that Banner accused it of materially breaching the Agreement in two ways that are not actually material breaches.[5] The material breaches alleged by Banner in the second notice are:

> 1. HIPAA Violation . . . It has come to our attention that Saguaro physicians have violated the Health Insurance Portability and Accountability Act of 1996 (HIPAA), the federal patient privacy regulations, by improperly accessing patient records on at least four occasions.
>
> 2. Failure to Meet Performance Objectives . . . As you and I recently discussed and reviewed, for the first quarter of 2007 the performance score goal was established at 1.55. Saguaro's performance score for that period was .75, less than half the expected performance score.

Dkt. #106-8 at 19-20.

Neither of these alleged failures is specifically named as a material breach in Paragraph 7.4 of the Agreement, but both of them represent allegations by Banner that, if true, could show that Saguaro failed to "provide the essential functions" of the Agreement, and hence could amount to material breaches under the language of the Agreement. Dkt. #106-3 at 7. Because Paragraph 14 of the Agreement states that Saguaro must comply with "federal, state and local government laws, rules and regulations," a HIPAA violation could amount to a material breach. *Id.* at 12. Likewise, the failure of Saguaro to perform in a satisfactory manner could amount to a failure to "provide the essential functions" of the

---

[5] Saguaro also alleges that Banner breached through allegations made in the first and third notices, but the Court will not consider those for the reasons discussed above.

Agreement. *Id.* at 7. Saguaro argues that the parties' failure to state in the First Amendment that poor performance could constitute a material breach means that the parties did not intend that to be the case. The Court cannot agree as a matter of law given that the material breach provision of the Agreement is drafted broadly. The Court also finds no language in the Agreement stating that Banner breaches the Agreement by accusing Saguaro of a breach that turns out to be immaterial, and Saguaro has pointed to no such language. Banner might be liable for breach if it terminated the Agreement for an immaterial reason and had no other material reason for the termination, but Saguaro does not make that claim. The Court cannot conclude that Banner breached the Agreement merely by accusing Saguaro of an immaterial breach.

### 2. A question of fact exists as to whether Banner breached by rejecting Saguaro's cures.

Saguaro argues that Banner breached the Agreement by rejecting Saguaro's cures of the alleged violations. As to the alleged HIPAA violation, a question of material fact exists as to whether Saguaro cured the violation. Saguaro claims that it cured when Banner's "own hand-picked panel [] found that Dr. Malhotra did not violate HIPAA." Dkt. #107 at 10. This panel, however, did not find that Malhotra did not violate HIPAA. Rather, it found that "the MEC failed to prove that Dr. Malhotra had any INTENT to violate policies and rules implementing patient confidentiality requirements." Dkt. #106-8 at 31 (capitalization in original). The parties disagree as to whether Malhotra violated HIPAA, and each party has submitted an expert report on this very issue. Dkt. #120-3 at 35-39; #120-3 at 41-43. This factual dispute prevents the Court from granting summary judgment.

As to the alleged failure of Saguaro to meet performance standards, neither party argues whether Saguaro cured that failure.

### B. Failure to mitigate damages.

Plaintiffs argue that they are entitled to summary judgment on the issue of whether their claims are barred by a failure to mitigate damages. Dkt. #107 at 12. For their claims to be barred, they contend, Banner would have to prove that "there were substantial

equivalent jobs available" and that Plaintiffs "failed to use reasonable diligence in seeking one." *Id.* This, however, is the mitigation standard in a Title VII employment suit context. *See Odima v. Westin Tucson Hotel*, 53 F.3d 1484, 1496-97 (9th Cir. 1995). Plaintiffs argue that the standard applies to this non-Title VII context because Malhotra's claim under § 1981 is similar to a Title VII employment discrimination claim. *See Fonseca v. Sysco Food Servs. of Ariz., Inc.*, 374 F.3d 840, 850 (9th Cir. 2004); *Manatt v. Bank of America*, 339 F.3d 792, 800-801 (9th Cir. 2003); *Lowe v. City of Monrovia*, 775 F.2d 998, 1010 (9th Cir. 1985); *Lewis v. Univ. of Pittsburgh*, 725 F.2d 910, 915 n.5 (3d Cir. 1983). None of the cases cited by Plaintiffs discuss mitigation or a defendant's burden in proving that a plaintiff failed to mitigate. The mere fact that the claims for Title VII and § 1981 share a similar analysis does not mean that all affirmative defenses share the same analysis, standards, and burdens. Plaintiffs have cited no authority indicating that the employment context standard should apply here. Moreover, Plaintiffs appear to ignore the fact that only one of their claims is brought under § 1981. The remainder of their claims are based on Arizona law and would not be governed by Title VII defense standards in any event.

The appropriate standard in this case is the general mitigation standard in Arizona. "The key requirement is that the injured party exercise [r]easonable care to mitigate damages," and the defendant "has the burden of proving that mitigation was reasonably possible but not reasonably attempted." *Fairway Builders, Inc. v. Malouf Towers Rental Co., Inc.*, 603 P.2d 513, 526 (Ariz. App. 1979); *see West Pinal Family Health Ctr., Inc. v. McBryde*, 785 P.2d 66, 68 (Ariz. App. 1990); *N. Ariz. Gas Serv. Inc. v. Petrolane Transp., Inc.*, 702 P.2d 696, 706 (Ariz. App. 1985). Banner has shown at least a dispute of fact as to whether mitigation was possible but not attempted by Plaintiffs. Dkt. #119 at 15. There is evidence that Malhotra declined to pursue a contract for hospitalist services at Havasu Regional Medical Center.[6] *Id.*; Dkt. #120-2 at 5-7. And there is some evidence that Saguaro

---

[6] Saguaro argues that this argument has no supporting facts. The Court disagrees. The facts are contained in Malhotra's deposition, where he identifies the factors that went into his decision not to proceed with the Havasu opportunity. Dkt. #120-2 at 7.

- 7 -

1 failed to mitigate given that the physicians who formed the basis of Saguaro's practice are
2 still working in Saguaro's old offices under a new name. Dkt. #119 at 15; #120-2 at 9-11.
3 These facts, viewed in the light most favorable to Banner, could convince a reasonable jury
4 that Saguaro and Malhotra failed to mitigate their damages. Plaintiffs are not entitled to
5 summary judgment on this issue.

      **C.    Plaintiffs' request to strike portions of Banner's statement of facts.**

In their reply, Plaintiffs ask the Court to strike two statements of fact made by Banner on the ground that the statements are contrary to previous Rule 30(b)(6) testimony offered by Banner. Dkt. #124 at 10-11. The Court did not rely on either statement in ruling on Plaintiffs' motion for summary judgment. The request will be denied as moot.

**IV.    Defendant's motion for summary judgment.**

Defendant seeks summary judgment on three of Plaintiffs' claims: (1) intentional interference with contractual relations of Malhotra (Count Four); (2) intentional interference with contractual relations of Saguaro (Count Five); and (3) violation of Civil Rights Act of 1866, 42 U.S.C. § 1891 (Count Six). The Court will grant summary judgment on Counts Five and Six, and deny summary judgment on Count Four.

      **A.    Plaintiffs' objections.**

Plaintiffs object to numerous pieces of evidence submitted by Banner and to many of the assertions made in Banner's statement of facts. First, Plaintiffs object to Banner's submission of affidavits they claim were submitted after their response. Dkt. #128 at 2. The affidavits themselves, however, were included with Banner's original motion. Dkt. #114. The only affidavits filed after Plaintiffs' response were compliance affidavits which contain no substantive material. Dkt. #125 at 1. Because Plaintiffs show no prejudice as a result of the late filing of the compliance affidavits, the Court will deny Plaintiffs' objection. Second, Plaintiffs object to a declaration of Dr. Raju submitted with Banner's reply. The Court will consider that objection in its discussion of the § 1981 claim.

Plaintiffs object to many statements in Banner's statements of facts on the grounds that they are hearsay, lack foundation, or are inadmissible at trial. Dkt. #123, ¶¶ 1, 4, 5, 6,

7, 8, 10, 13, 14, 15, 16, 17, 18, 19, 20, 21, 24, 25, 26, 27, 36, 41, 57. The Court need not resolve these objections because Banner has filed a *Celotex* motion that seeks summary judgment because Plaintiffs have failed "to make a showing sufficient to establish the existence of an element essential to [its] case, and on which [they] will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. The Court's ruling will be based on whether Plaintiffs have produced sufficient evidence to survive summary judgment, not on the evidence in Banner's statement of facts.

### B. The intentional interference claims.

Banner seeks summary judgment on Malhotra's claim for intentional interference with contractual relations and Saguaro's claim for intentional interference with contractual relations. Because both claims require the same legal analysis, the Court will address them together.

To prove intentional interference with contract, Plaintiffs must demonstrate (1) the existence of a contractual relationship or business expectancy, (2) Banner's knowledge of that relationship or expectancy, (3) Banner's intentional interference causing a breach or termination of the relationship or expectancy, and (4) resulting damage. *Miller v. Hehlen*, 104 P.3d 193, 202 (Ariz. App. 2005). The interference must be improper in motive or means, and whether a particular action is improper is determined by considering (a) the nature of Banner's conduct, (b) Banner's motive, (c) the interests of Plaintiffs with which Banner's conduct interferes, (d) the interests sought to be advanced by Banner, (e) the social interests in protecting the freedom of Banner and the contractual interests of Plaintiffs, (f) the proximity of Banner's conduct to the interference, and (g) the relationship between Banner and Plaintiffs. *Hill v. Peterson*, 35 P.3d 417, 420 (Ariz. App. 2001).

#### 1. Issues of fact exist as to Malhotra's claim.

Malhotra's intentional interference claim rests on the assertion that Banner's action in terminating the Agreement caused Saguaro to terminate its relationship with him and also caused him to lose his relationship with his patients. Banner argues that Malhotra cannot prove his intentional interference claim because intentional interference must be a direct

- 9 -

interference, and Malhotra does not claim a direct interference. In support of this argument, Banner cites to *Lawler v. Eugene Wuesthoff Memorial Hospital Association*, 497 So.2d 1261, 1263 (Fla. App. 1986). In *Lawler*, after a hospital terminated the staff privileges of a doctor, the doctor sued on behalf of himself and his professional association, arguing that the hospital intentionally interfered with his relationship with his patients. The court found that he could not prove intentional interference because the loss of his relationship with his patients was not a direct result of the alleged wrongful action – his termination from the hospital. According to the court, a direct interference is required for a plaintiff to show intentional interference with contract.

The Court agrees that this rule is found in Florida tort law. *See, e.g., Romika-USA, Inc. v. HSBC Bank USA, N.A.*, 514 F. Supp. 2d 1334 (S.D. Fla. 2007); *IBP, Inc. v. Hady Enters, Inc.*, 267 F. Supp. 2d 1148 (N.D. Fla. 2002); *Hager v. Venice Hosp., Inc.*, 944 F. Supp. 1530 (M.D. Fla. 1996); *Stutzke v. D.G.C. Liquidation Co.*, 533 So.2d 897 (Fla. App. 1988). This Court, however, must apply Arizona law and the requirement that interference be direct is not found in Arizona law. Nor has Banner cited case law from any other state that applies the rule. Absent some reason to conclude that Arizona courts will apply the direct interference rule, the Court will not apply it here, particularly when the rule appears to be found only in one state.

Banner further argues that Malhotra cannot prove his claim because he lacks evidence that Banner acted improperly. This is a disputed question of fact. Malhotra asserts that Banner's improper act was in terminating the Agreement. Whether that termination was improper will depend on whether it was based on immaterial breaches or included an improper rejection of a cure. Malhotra has shown sufficient evidence to create disputed questions of fact on these issues.

Banner also argues that Malhotra's claim is barred by the economic loss rule. That rule prohibits a party from recovering in tort if he suffered purely economic losses that can be recovered through a contract action. *Hughes Custom Bldg., LLC v. Davey*, 212 P.3d 865 (Ariz. App. 2009). Banner argues that Malhotra's claim is nothing more than a disguised

breach of contract claim and that, as a result, he should seek his remedy through a contract claim. But there was no contract between Malhotra and Banner. The economic loss doctrine simply does not apply to Malhotra's claim.

Finally, Banner argues that even if the Court does not grant summary judgment, Malhotra cannot seek punitive damages because he must prove by clear and convincing evidence that Banner engaged in aggravated and outrageous conduct with an evil mind, and he cannot do so. *Saucedo v. Salvation Army*, 24 P.3d 1274, 1277 (Ariz. App. 2001). Malhotra responds by stating that his "Statement of Facts set[s] forth a picture [from] which a reasonable jury could conclude that an entity simply decided to take away the rights of an individual and ignore its contracts, its policies, its procedures and get that person at all cost."[7] Dkt. #122 at 16-17. Malhotra does not point to any specific facts tending to show any aggravated or outrageous conduct, and certainly no facts that show an evil mind on Banner's part.[8] Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. Because Malhotra has failed to point to facts showing that he would be entitled to punitive damages, the Court will grant summary judgment on this issue.

**2.  Banner is entitled to summary judgment on Saguaro's claim.**

Saguaro's intentional interference claim rests on the assertion that Banner, by wrongfully terminating their Agreement, intentionally interfered with the contracts and relationships Saguaro had with its doctors. Dkt. #18 at 20-21. Banner argues that Saguaro has presented no evidence that any conduct by Banner caused Saguaro's doctors to resign.

---

[7] He also makes an argument regarding punitive damages in a § 1981 claim, but this argument is irrelevant to the intentional interference claim. Dkt. #122 at 17.

[8] Despite Malhotra's failure to identify such evidence, the Court spent considerable time with his statement of facts searching for evidence that Banner acted with an evil mind. The Court found none.

The Court agrees. The tort of intentional interference with contractual relations requires proof of causation. The interference must cause the termination of the relationship or contract. *Agilysys v. Vipond*, 2007 WL 73556, *3 n.1 (D. Ariz. 2007); *Miller v. Hehlen*, 104 P.3d 193 (Ariz. App. 2005). Saguaro does not address this argument in its response and points to no evidence that Banner's actions caused Saguaro's doctors to terminate any relationship. The Court will grant Banner's motion for summary judgment on Saguaro's intentional interference claim. *Celotex*, 477 U.S. at 322.

### C. Banner is entitled to summary judgment on the § 1981 claim.

The parties disagree as to the prima facie elements of a § 1981 claim. Malhotra argues that the Court should use the four elements that the Ninth Circuit uses in Title VII cases because a § 1981 claim "follows the same legal principles as those applicable in a Title VII disparate treatment case." *Fonseca*, 374 F.3d at 850. While the Court agrees that Title VII and § 1981 share many of the same legal principles given that "[b]oth require proof of discriminatory treatment and the same set of facts can give rise to both claims," the Court cannot agree that the elements of a Title VII claim and a § 1981claim are identical. *Id.* The Title VII elements – (1) that the plaintiff belong to a racial minority, (2) that plaintiff was qualified for a job for which the employer was seeking applicants, (3) that plaintiff was subject to an adverse employment action, and (4) that similarly situated individuals outside his protected class were treated more favorably – do not easily apply to the facts in this case. *Id.* at 847. This case concerns racial discrimination affecting contractual relationships between parties, not racial discrimination in a hiring situation. The Court concludes that the appropriate elements come from § 1981 cases. To establish a claim under § 1981, Malhotra must show that (1) he is a member of a racial minority, (2) Banner had an intent to discriminate on the basis of Malhotra's race, and (3) the discrimination concerned one of the activities enumerated in § 1981. *Mian v. Donaldson, Lufkin & Jenrette Secs. Corp*, 7 F.3d 1085, 1087 (2d Cir. 1993); *Green v. State Bar of Tex.*, 27 F.3d 1083, 1086 (5th Cir. 1994); *Hampton v. Dillard Dept. Stores, Inc.*, 247 F.3d 1091, 1102 (10th Cir. 2001); *Bediako v. Stein Mart, Inc.*, 354 F.3d 835, 839 (8th Cir. 2004); *Jackson v. Bellsouth Telecomms.*, 372

F.3d 1250, 1270 (11th Cir. 2004).

Malhotra has shown no evidence of element two – that Banner had an intent to discriminate against Malhotra on the basis of his race. Malhotra attempts to rely on evidence that the CEO of another hospitalist group, who was of another race, was treated more favorably. But the CEO, Dr. Raju, is also Indian and was also born in India.[9] Dkt. #131-2 at 6. Malhotra also attempts to rely on the fact that all the other chairmen of Banner's MEC were Caucasian, including his replacement. Dkt. #122 at 15. But this does not show an intention to discriminate against Malhotra on the basis of his race.

Malhotra's response does not discuss evidence showing an intent to discriminate on the basis of race. Rather, he focuses on evidence showing that "similarly situated individuals outside his protected class were treated more favorably." Dkt. #122 at 14. This is an element of a Title VII cause of action, not a § 1981 cause of action. Viewing the evidence in the light most favorable to Malhotra, one might argue that the racial composition of Banner's MEC is circumstantial evidence of discriminatory intent. But without more, the Court cannot conclude that this evidence is "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court therefore must grant summary judgment in Banner's favor. *Celotex Corp.*, 477 U.S. at 322.

**IT IS ORDERED:**

1. Plaintiffs' motion for summary judgment (Dkt. #107) is **denied**.
2. Defendant's motion for summary judgment (Dkt. #114) is **granted in part and denied in part**..

---

[9] The Declaration in which Raju confirms his Indian race was submitted with Banner's reply. Dkt. #131. Plaintiffs object to the inclusion of Raju's Declaration because he will not be a witness at trial and because this is "new evidence" submitted for the first time in a reply brief, which they assert must be stricken. Raju's declaration, however, was submitted to respond to an allegation that Raju was American-born, which was raised in Plaintiffs' response. The Court concludes that Raju's declaration is not new evidence, but rebuttal evidence allowed in appropriate circumstances in a reply. *See, e.g., EEOC v. Creative Networks, LLC and Res-Care, Inc.*, 2008 WL 5225807, *2 (D. Ariz. 2008).

3. The Court will set a final pretrial conference by separate order.

DATED this 6th day of November, 2009.

*David G. Campbell*
David G. Campbell
United States District Judge