**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Saguaro Medical Associates, P.C., an Arizona professional corporation; and Rakesh Malhotra, M.D., | ) ) ) ) | No. CV-08-1386 PHX-DGC **ORDER** |
| Plaintiffs, | ) ) | |
| vs. | ) ) | |
| Banner Health, an Arizona corporation, d/b/a Banner Thunderbird Medical Center, | ) ) ) ) | |
| Defendant. | ) ) ) | |

Defendant Banner Health has filed two motions to exclude the testimony and report of Plaintiffs' damages expert, Stephen K. Clarke. Dkt. ##165, 170. Plaintiffs have filed a response. Dkt. #190. Oral arguments were heard during the final pretrial conference on January 29, 2010. The Court has reviewed the reports of both parties' experts and has read the entire deposition of Clarke. For reasons that follow, the Court will deny the motions.

**I.  Background.**

Banner is a medical center that runs an emergency department staffed by hospitalists. Saguaro is a professional corporation owned by Plaintiff Rakesh Malhotra which provides hospitalist services. On June 1, 2005, Banner and Saguaro entered into an agreement under which Saguaro would provide hospitalist services to Banner. The agreement had a termination date of June 30, 2009.

On March 28, 2008, Banner terminated the agreement based on several alleged

breaches by Saguaro. Saguaro and Malhotra filed the present litigation, alleging among other things that Banner breached the agreement. Saguaro and Malhotra seek damages in the form of "but-for earnings" – that is, earnings Saguaro and Malhotra would have collected had Banner not breached the agreement.

In support of their request for damages, Saguaro and Malhotra seek to introduce a report and testimony from Clarke. Dkt. #170-1 at 3-9. Clarke arrives at the damages suffered by Saguaro and Malhotra by calculating the earnings Plaintiffs would have received had Banner not terminated the agreement – Clarke labels them "but-for earnings" – and subtracting earnings Malhotra will receive under his new employment arrangements. To make this calculation, Clarke averages the financial results of Saguaro for the years 2005, 2006, and 2007. He calculates but-for earnings by (1) taking Saguaro's year-end profits, (2) adding the compensation Saguaro paid its two owners (presumably because Saguaro, as a small, privately held corporation, distributed virtually all of its profits to its owners each year), and (3) subtracting the amount of compensation Saguaro would be required to pay a non-owner to generate the same level of earnings that were generated by Malhotra's co-owner for the corporation. *Id.* The assumption appears to be that Saguaro would have continued in business, at generally the same income levels as 2005-2007, but with only Malhotra as owner. Finally, Clarke concludes that the damages suffered by Saguaro and those suffered by Malhotra are the same; he does not make separate calculations for the two Plaintiffs. Clarke opines that Banner has caused Plaintiffs $2,686,111 in losses if earnings are projected to June of 2013, and $3,933,903 in losses if earnings are projected to November of 2019. *Id*.

Banner's expert, Kevin Cornish, critiques Clarke's report. Dkt. #165-1 at 37. Cornish discusses several factual flaws in Clarke's report and, using Clarke's methodology, calculates that Plaintiffs' damages will end in 2009 and will be substantially less than $1,000,000. *Id*. at 64.

**II.     *Daubert*, Rule 702, and Banner's General Argument.**

The Supreme Court has noted that Rule 702 imposes a special obligation on trial

- 2 -

judges to "ensure that any and all scientific testimony . . . is not only relevant, but reliable." *Daubert v. Merrill Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993). Plaintiffs bear the burden of proving that Clarke's report and opinions are relevant and reliable. *See Kumho Tire*, 526 U.S. at 141; *Bourjaily v. United States*, 483 U.S. 171, 175 (1987). "A trial court not only has broad latitude in determining whether an expert's testimony is reliable, but also in deciding *how* to determine the testimony's reliability." *Elsayed Mukhtar v. Cal. State Univ., Hayward*, 299 F.3d 1053, 1064 (9th Cir. 2002) (emphasis in original).

In December of 2000, Rule 702 was amended to codify the gatekeeping requirements of *Daubert*. The Advisory Committee Note to the 2000 amendment is instructive:

> A review of the caselaw after *Daubert* shows that the rejection of expert testimony is the exception rather than the rule. *Daubert* did not work a "seachange over federal evidence law," and "the trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system."

Fed. R. Evid. 702 advisory committee's note (quoting *United States v. 14.38 Acres of Land Situated in Leflore County, Miss.*, 80 F.3d 1074, 1078 (5th Cir. 1996)). The Advisory Committee further noted that proponents of expert testimony "'do not have to demonstrate to the judge by a preponderance of the evidence that the assessments of their experts are correct, they only have to demonstrate by a preponderance of evidence that their opinions are reliable . . . . The evidentiary requirement of reliability is lower than the merits standard of correctness.'" *Id.* (quoting *In Re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 744 (3d Cir. 1994)). As one court has explained, "[i]n serving its gatekeeping function, the court must be careful not to cross over into the role of factfinder. It is not the job of the court to insure that the evidence heard by the jury is error-free, but to insure that it is not wholly unreliable." *Southwire Co. v. J.P. Morgan Chase & Co.*, 528 F.Supp.2d 908, 928 (W.D. Wis. 2007).

Thus, one notable commentator has observed that the 2000 amendments to Rule 702 "were not intended to signal an abandonment of the liberal attitude of the Federal Rules of Evidence toward the admissibility of opinion testimony." 4 J. Weinstein & M. Berger, Weinstein's Federal Evidence § 702.05[2][a] (2d ed. 2008). Nor were they intended to suggest that courts should place less reliance on the traditional tools of the adversary system

to uncover the truth. As the Supreme Court explained in *Daubert*, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." 509 U.S. at 596.

**III. Banner's Argument.**

Banner does not question Clarke's expertise to opine on lost profits. Nor does Banner take issue with his general methodology – using Saguaro's financial history to estimate the profitability of Saguaro if Banner had not terminated the agreement, projecting those profits over a reasonable period of time, and discounting the profits back to present value. Instead, Banner argues that Clarke has failed to provide a Plaintiff-specific opinion on damages and has incorporated several factual errors into his opinions. The Court disagrees with Banner's first contention, and concludes that the factual flaws go to the weight, not the admissibility, of Clarke's testimony. Clarke will be subject to rigorous cross-examination. Banner will present its own expert to criticize Clarke's testimony. And, as noted during the final pretrial conference held on January 29, 2010, Clarke will be strictly limited in his testimony to the opinions and explanations provided in his expert report and his deposition. *See* Fed. R. Civ. P. 26(a)(2)(B)(i) (stating that the expert report must contain "a complete statement of all opinions the witness will express and the basis and reasons for them"); Dkt. #24 at 2 (parties required to produce "full and complete expert disclosures"). Given these protections of the adversary process, the Court concludes that Clarke's opinions are not so unfounded as to warrant exclusion.

**A. Banner's Relevancy Argument.**

Banner contends that Clarke's opinion is not relevant because he fails to present separate damages calculations for Saguaro and Malhotra. Clarke opines, however, that the damages of Saguaro and Malhotra are the same. He relies on the fact that Saguaro is a small, privately held corporation. He also assumes that Saguaro's other owner would have dropped out of the picture if Saguaro continued its business with Banner. Thus, Clarke essentially opines that but-for Banner's conduct, Saguaro would have continued as a corporation wholly

owned and operated by Malhotra, with Saguaro's profits redounding to Malhotra's benefit.

Banner may have good reason to dispute the reasonableness of Clarke's assumption concerning the Malhotra-only ownership of Saguaro, but the question before the Court is not the correctness of Clarke's opinion, but its relevancy. Clarke has opined that the damages of Saguaro and Malhotra are the same. He has quantified those damages. His testimony therefore is relevant to the damages of both Plaintiffs.[1]

Banner argues that this Court's decision in *Lemon v. Harlem Globetrotters Int'l, Inc.*, 437 F. Supp. 2d 1089, 1107 (D. Ariz. 2006), shows that Clarke's opinion must be excluded because he fails to calculate individual damages for Plaintiffs. The Court does not agree. The expert in *Lemon* calculated one aggregate damages number for all the plaintiffs; she made no attempt to divide those damages among the seven differently-situated plaintiffs. Clarke contends that damages are the same for each Plaintiff. Unlike the expert in *Lemon*, he provides a damages calculation for each Plaintiff.[2]

### B. Banner's Reliability Arguments.

Banner asserts that Clarke failed to conduct a sufficient investigation of the facts. For example, Banner contends that he failed to find all of Malhotra's sources of income since termination of the Banner agreement, that Banner was not the sole source of income for Saguaro as Clarke assumes, and that doctors in the Saguaro practice were unhappy and might have left the practice even if the contract with Banner had continued. Although these criticisms suggest that Clarke's opinion may be factually flawed, the Court does not conclude that they so undermine the opinion as to render it inadmissible. Clarke reviewed various pleadings and disclosure statements from the case, documents produced in the litigation, Saguaro accounting records for the years 2005, 2006, 2007, and 2008, and various

---

[1] Banner also argues that Clarke failed to provide separate damages calculations for each legal claim in this case, but Banner never explains why those calculations should be different.

[2] Banner also argues that Clarke's opinion is irrelevant because it calculates damages based on Banner's termination of the contract, an issue Banner says is not in the case. The Court ruled against Banner on this argument at the final pretrial conference. *See* Dkt. #194.

publications relating to hospitalists and occupational wage estimates. *See* Dkt. #165-1 at 25. Clarke met with counsel for Plaintiffs and with Malhotra, and spoke with Saguaro's accountant. Although he may have omitted some significant facts that will be emphasized by Banner at trial, the Court concludes that he has sufficient information to opine on Plaintiffs' damages. The errors identified by Banner go to the weight, not the admissibility, of Clarke's opinions. As noted above, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596.

Banner also contends that Clarke failed to use a reliable methodology when he projected Plaintiffs' damages through the year 2019. As counsel for Plaintiffs made clear at the final pretrial conference, however, Clarke will not opine that Saguaro would have retained a contract with Banner until 2019 had Banner acted properly. Rather, Clarke will assume the relationship would have lasted that long, and Plaintiffs will rely on other evidence to convince the jury of this fact. Clarke's assumption as to what other evidence might show cannot be characterized as an unreliable methodology. The Court also notes that Clarke's opinion calculates cumulative losses for each of the years between now and 2019. If believed by the jury, the calculations will allow the jury to determine damages even if they reject Plaintiffs' contention that Saguaro would have continued performing services for Banner through 2019. *See* Dkt. #170-1 at 16.

**IV. Rule 403.**

Banner contends that Clarke's opinions should be excluded under Rule 403 because they will confuse the jury. The Court concludes, however, that the relevancy of Clarke's damages testimony will not be substantially outweighed by a risk of jury confusion. Counsel for both sides will clearly articulate their positions and will effectively examine and cross-examine witnesses at trial. Banner's expert also intends to explain Clarke's opinion and show why it is flawed. The Court cannot conclude the jury will be confused.

**IT IS ORDERED** that Banner's motions to exclude the testimony of Steven K. Clarke (Dkt. ##165, 170) are **denied**.

DATED this 10th day of February, 2010.

*David G. Campbell*
David G. Campbell
United States District Judge